IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FRANK HERNANDEZ, )
)
Plaintiff, )
)
v. ) No. 05 C 5274
)
CHASE BANK USA, N.A. and )
JPMORGAN CHASE & CO., )
)
Defendants. )

## MEMORANDUM OPINION AND ORDER

Before me is a motion to dismiss under Fed. R. Civ. P. 12(b)(6) brought by defendants Chase Bank USA, N.A. and JPMorgan Chase & Co. (collectively "Chase"). The class complaint brought by the plaintiff, Frank Hernandez, alleges that Chase violated his rights under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C.A. § 1681 et seq (2005). Mr. Hernandez's complaint alleges that Chase "prescreened" his credit report, without his permission, in order to send him a mailer inviting him to call Chase to investigate a home equity loan. The front side of the mailer from Chase states, in relevant part:

> Chase is pleased to inform you that your credit is good with us. You have been pre-qualified for up to $100,000 or more. Now, no matter what your financial goals . . . whether you'd like more cash at hand . . . or monthly savings. . . a Chase Home Loan can help you do what you want. And it's surprisingly easy. Just call [] and talk to a Chase Lending Specialist about how to turn your equity into

cash. . . . And remember, you're already pre-qualified.

At the bottom of the front side of the mailer is an asterisk and a notation to "[s]ee reverse side for Important Program Information." The reverse side of the mailer sets forth additional restrictions and conditions, including that

> [t]his offer is for a secured loan only, and your residence is the collateral for the loan. Our Lending Specialists will help you determine the type of loan that best suits your needs, and the maximum loan you are eligible for, and confirm your pre-qualified status. Afterward, you must complete an application, comply with all of our loan program requirements and pay all applicable loan fees.

The mailer further states that Chase

> "may withdraw our offer entirely if updated information we receive from a credit bureau, during the loan structuring process, or in your application shows that you do not meet all of our loan program requirements. We may also withdraw this offer if you move outside our marketing area, or if you do not have sufficient income to repay the new obligation, or your minimum loan amount is less than $15,000 (or $10,000 in MI)."

The mailer also specifies that

> [a]ll loans are subject to credit and property approval. Once you apply, your application will be processed and fully evaluated in accordance with Chase's underwriting criteria. The final amount of your loan will be based on information obtained and verified as your application is being processed, including, but not limited to the credit bureau information, appraisal/property valuation, verification of income and equity in your home.

Further, the "Important Program Information" section of the mailer states that "[p]rogram terms and conditions are subject to change without notice," "[n]ot all products are available in all states or for all loan amounts" and "[o]ther restrictions and conditions may apply."

Mr. Hernandez's complaint alleges that Chase violated his rights under the FCRA because this mailer was not a "firm offer of credit" as required by the FCRA in order to allow Chase to access Mr. Hernandez's credit report without his permission. The complaint further alleges that Chase's violations were willful. Mr. Hernandez's complaint does not allege that he suffered any actual damages (and does not allege that he attempted to contact Chase in response to the mailer), but requests statutory damages, injunctive relief, and fees and costs.

In response, defendants have brought their motion to dismiss. Chase's motion rests on two grounds. First, Chase contends that, as a matter of law, the mailer at issue was a "firm offer" such that unauthorized access of plaintiff's credit report in order to send the mailer was not a violation of the FCRA. Second, Chase argues that actual damages are a requirement to recover for willful violations of the FCRA, but plaintiff has not alleged he suffered any actual damages.

For the reasons set forth below, I deny defendants' motion.

I.

In assessing defendants' motion to dismiss, I must accept all well-pleaded facts in Mr. Hernandez's complaint as true. *Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). I must view the allegations in the light most favorable to the plaintiff. *Gomez v. Illinois State Bd. of Educ.*, 811 F.2d 1030, 1039 (7th Cir. 1987). Dismissal is proper only if the plaintiff can prove no set of facts to support his claim. *First Ins. Funding Corp. v. Fed. Ins. Co.*, 284 F.3d 799, 804 (7th Cir. 2002). My review is limited to the pleadings on file, so I must exclude from my analysis any factual assertions either party made in their papers related to the motion to dismiss. *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1430 (7th Cir. 1996).

II.

I first address, accepting the allegations in Mr. Hernandez's complaint as true and viewing those allegations in the light most favorable to him, whether Chase's mailer could be construed to fall outside the FCRA's definition of "firm offer of credit."

If a consumer has not authorized a consumer reporting agency to furnish his credit report in connection with a credit transaction, the consumer reporting agency may only do so if (1) the transaction consists of a "firm offer of credit or insurance"; (2) the consumer reporting agency has complied with the consumer

4

opt-out provisions set forth in the FCRA; and (3) the consumer has not elected to have his name excluded from lists provided without his authorization. 15 U.S.C.A. § 1681b(c)(1).

The FCRA defines a "firm offer of credit" as any offer of credit to a consumer "that will be honored if the consumer is determined, based on information in a consumer report on the consumer, to meet the specific criteria used to select the consumer for the offer." 15 U.S.C.A. § 1681a(l). The FCRA also allows, however, that a "firm offer" may be conditioned on three criteria. *Id.* First, the offer may be conditioned on the credit application showing that the consumer "meet[s] specific criteria bearing on credit worthiness" that were established before selecting the consumer for the offer, and for the purpose of determining whether to extend the consumer credit. *Id.* at § 1681(a)(1)(1). Second, the offer may be conditioned on a verification (through a credit report, credit application, or other information bearing on credit worthiness) that the consumer meets the preselected criteria used to select the consumer for the offer. *Id.* at § 1681(a)(1)(2). Finally, the offer may be conditioned on the consumer furnishing collateral for the loan, where the collateral was preestablished and disclosed to the consumer in the credit offer. *Id.* at § 1681a(l)(3).

The "conditions" articulated in the statutory definition of "firm offer of credit," however, go to the issue of whether the

offer is "firm" rather than the substance of the offer itself. Under the statutory definition, an offer can be "firm" even though it is conditioned upon preestablished criteria. However, the statutory definition does not explain what the "offer of credit" must provide (i.e., what it must "offer" to the potential borrower). In *Cole v. U.S. Capital, Inc.*, 389 F.3d 719 (7th Cir. 2004), the Seventh Circuit addressed how to determine whether a mailer constitutes a "firm offer" for purposes of a motion to dismiss. The Seventh Circuit noted that whether or not an offer of credit will be honored is not dispositive as to whether that offer is a "firm offer of credit" under the FCRA. *Id.* at 727. A court should also consider "the *entire* offer and the effect of *all* the material conditions that comprise the credit product in question." *Id.* at 727-28. If, in context, the court finds the "offer" to be "a guise for solicitation rather than a legitimate credit product," then the "offer" is not a "firm offer of credit" under the FCRA. *Id.* at 728.

Under *Cole*, in addition to a guarantee that the offer would be honored, the key issue is whether the offer actually has value to the consumer. *Id.* This can be determined by considering the amount of credit to be extended, the terms of the offer (including interest and the length of the repayment period), and any limitations on the offer. In *Cole*, the Seventh Circuit determined that an offer amounting to a $300 guaranteed line of credit with

6

which to purchase a vehicle from a particular automobile dealer, with interest ranging from 3.0 to 24.9%, in a situation in which the creditor expressly did not guarantee approval, constituted a solicitation rather than a firm offer. *Id.*

The Seventh Circuit addressed the "firm offer" issues raised in *Cole* in a later decision, *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948 (7th Cir. 2006), which overturned the district court's denial of class certification for the plaintiff's FCRA claims. One of the arguments the defendant made in *Murray* was that determining whether a "firm offer of credit" was made to class members was an individual issue that made class treatment impractical. In addressing this argument, the court discussed the *Cole* opinion's analysis of the FCRA definition of "firm offer of credit." The court in *Murray* interpreted the holding in *Cole* to mean that "a sham offer used to pitch a product rather than extend credit does not meet the statutory definition." *Murray*, 434 F.3d at 955. The court in *Murray* also held that the value of an offer is an objective standard; a court must ask whether an offer is useful to the "normal" consumer and not a particular consumer. *Id.* Importantly, the *Murray* court concluded that the appropriate *Cole* inquiry is "whether the four corners of the offer satisfy the statutory definition (as elaborated in *Cole*), and whether the terms are honored when consumers accept." *Id.* at 956.

Defendants rely on the language in the *Murray* opinion to argue that I should not apply the analysis in *Cole* because that case, as framed by *Murray*, dealt with a purported "firm offer of credit" that was in actuality a solicitation for an automobile sale (and not a "legitimate credit product"). Regardless of whether the facts of *Cole* are analogous to those before me, the test set forth in *Cole* is clearly relevant to this case. The *Murray* opinion supports, rather than contradicts, this conclusion. *Cole* and *Murray* hold that, at minimum, an offer that amounts to a product pitch is not a "firm offer," but they do not support defendants' contention here that any "offer" which involves a credit product must necessarily be a "firm offer of credit" under the FCRA. A credit offer can still fail the test articulated in *Cole* and clarified in *Murray*. Under the standard set forth in *Cole*, plaintiff is correct that is possible for an offer that is "vague" and a "solicitation for business" not to constitute a "firm offer of credit." Such an offer could be so vague as to provide no guaranteed value, and a solicitation for future presentment of an offer of credit rather than a current, firm offer of credit.

The question remains whether the mailer as described in Mr. Hernandez's complaint could be held to constitute a "firm offer." A "firm offer of credit" requires, at a minimum, that the terms of the offer be honored. *Murray*, 434 F.3d at 956. Here, plaintiff does not allege that Chase did not intend to honor the offer's

8

terms. Plaintiff instead argues that the terms were so vague that "honoring" them was irrelevant; they provided no value to the consumer. The mailer at issue in this litigation offers a secured home loan. The mailer is unclear about the amount of the loan; it appears to offer a loan between $10,000 and "$100,000 or more." The mailer does not provide an interest rate or repayment period. It does provide multiple limitations, however, including that, after speaking with a "Lending Specialist," the recipient of the mailer and Chase will determine the type and amount of the loan. The mailer also states that the final amount of the loan will be based on "information *obtained* and verified" during the application process (emphasis added) and that "program terms and conditions are subject to change without notice." Chase argues that these terms (interest rate, duration of the loan, etc.) are not required to appear on the mailer, but are part of the conditions upon which the offer may lawfully depend under § 1681a(l). However, the contingent nature of these terms goes beyond verification of preselected criteria. The mailer suggests that the exact nature of the loan is subject to more than verification and analysis of preselected criteria, allowed by the FCRA, but rather to criteria which are subject to change. These terms suggest that the offer is not "firm" but rather is a solicitation for a credit product that is undefined save the requirement that Mr. Hernandez's residence serve as collateral.

The Seventh Circuit's opinion in *Murray* counsels this court to consider "the *entire* offer and the effect of *all* the material conditions that comprise the credit product in question." *Murray*, 434 F.3d at 727-28. The defendants may be correct that the criteria used to determine the specifics of the offer need not be disclosed on the face of the mailer, but as these criteria form part of the offer and the material conditions of the credit product, they are necessary to determine whether the offer was a firm one. At the motion to dismiss stage of the litigation, taking the plaintiff's allegation as to the circumstances and nature of the mailer as true, plaintiff could establish a violation of the FCRA.

II.

Mr. Hernandez alleges that defendants willfully violated the FCRA. Civil liability for willful violations of the FCRA may be "any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000" as well as punitive damages and fees and costs as determined by the court. 15 U.S.C.A. § 1681n(a). Mr. Hernandez's complaint does not allege that he suffered any actual damages,[1] and defendants argue that proof of actual damages are a requirement for recovery under

---

[1] In his response brief, plaintiff does contend that he suffered some amount of actual damages in the form of loss of privacy and risk of identity theft, but these allegations do not appear in his complaint. His complaint also does not request actual damages.

the FCRA even for willful violations of the statute. However, the plain text of the statute states that a plaintiff may recover actual damages **or** statutory damages. The Seventh Circuit's decision in *Murray* explicitly states that one reason FCRA suits are amenable to class treatment is because:

> individual losses, if any, are likely to be small-a modest concern about privacy, a slight chance that information would leak out and lead to identity theft. That actual loss is small and hard to quantify is why statutes such as the Fair Credit Reporting Act provide for modest damages without proof of injury.

*Murray*, 434 F.3d at 953.

The decision in *Murray* forecloses any arguments that actual damages need to be established for a willful violation of the FCRA. For this reason, plaintiff's complaint is sufficient to state a violation even without allegations of actual damages.

Defendants' motion to dismiss is therefore denied.

**ENTER ORDER:**

*/s/ Elaine E. Bucklo*

---
**Elaine E. Bucklo**
United States District Judge

Dated: May 2, 2006