# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| FRANK HERNANDEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CHASE BANK USA, N.A. and JPMORGAN CHASE & CO., | ) | No. 05 C 5274 |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Frank Hernandez ("Hernandez") has brought a class action complaint against defendants Chase Bank USA, N.A. ("Chase Bank") and JPMorgan Chase & Co. ("JPMorgan") alleging that they violated the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"). Hernandez has now moved to certify a class defined as

> (a) all persons with an address in Dupage [*sic*], Lake, Will or Kane counties in Illinois (b) to whom Defendants sent or caused to be sent material in the form represented by Exhibit A to the Complaint (c) on or after September 14, 2003 and before October 4, 2006 and (d) who did not obtain credit in response to the material. Additionally, a response to Exhibit A to the Complaint is not a prerequisite for class membership.

Defendants have filed a joint response to this motion arguing that class certification is inappropriate for numerous reasons, primarily because, in their view, Hernandez has not shown that common issues of fact or law predominate over individual issues. Further, defendants contend that Hernandez is not an appropriate class representative and that I should not appoint Hernandez's counsel as

1

counsel for the class. For the following reasons, I grant plaintiff's motion, certify his proposed class, and appoint attorneys from the firm of Edelman, Combs, Latturner & Goodwin, LLC as counsel for the class.

I.

The relevant facts necessary to rule on plaintiff's motion, as determined from a review of plaintiff's complaint, defendants' answer to it, and the parties' class certification pleadings and exhibits, are as follows: Chase Bank is a national banking association with its main office in Delaware. JPMorgan is a corporation with its principal place of business in New York. During his deposition, Hernandez testified that he received the document attached as Exhibit A to his complaint (the "mailer") sometime around the summer of 2005. Chase Bank admitted that it caused this mailer to be sent to Hernandez, and caused other documents in the same form to be sent to other consumers.[1] The front side of the mailer states that the recipient has "been pre-qualified for up to $100,000 or more." The mailer states that the recipient should "call ... and talk to a Chase Lending Specialist about how to turn your equity into cash" and to "remember, you're already pre-qualified." At the bottom of the front side of the mailer is an asterisk and a notation to "[s]ee reverse side for Important Program Information." The reverse side of the mailer sets forth additional restrictions and conditions, including that "[t]his offer is for a secured loan only, and your residence is the collateral for the loan" and that Chase "may withdraw our offer entirely if updated information we receive from a credit bureau, during the loan structuring process, or in your application shows that you do not meet all of our loan program requirements . . . or your minimum loan amount is less than

---

[1] Defendants argue that Hernandez has not alleged any conduct specific to JPMorgan, and that JPMorgan is improperly named. Defendants have not formally moved to dismiss JPMorgan, however, on this basis.

$15,000 (or $10,000 in MI)." The back side of the mailer also specifies that "[a]ll loans are subject to credit and property approval" and that "the final amount of your loan will be based on information obtained and verified as your application is being processed, including, but not limited to the credit bureau information, appraisal/property valuation, verification of income and equity in your home." Further, the "Important Program Information" section of the mailer states that "[p]rogram terms and conditions are subject to change without notice," "[n]ot all products are available in all states or for all loan amounts" and "[o]ther restrictions and conditions may apply."

Chase has admitted that it "arranged for a process by whereby requests are made of certain consumer reporting agencies respecting information contained in consumer reports, possessed by those agencies, that satisfies certain preselected criteria." It further admits that it used this process to send the mailer to Hernandez and other consumers. Defendants admit that more than 200 mailers in the form represented by Exhibit A were sent to residents of Illinois, Indiana and Wisconsin. According to Hernandez, counsel for the defendants has represented that there are approximately 4 million class members with addresses in the state of Illinois, and estimates that there are between 40,000 and 60,000 class members with addresses in DuPage, Lake, Will and Kane counties; defendants have not disputed this estimate. Hernandez further alleges that defendants violated 15 U.S.C. § 1681b by using, obtaining, or causing to be obtained his consumer credit report and those of the putative class members without authorization in order to send Exhibit A. Hernandez claims that this violation was willful. Hernandez's complaint seeks statutory damages, injunctive relief, attorney's fees and expenses, and other relief as appropriate. Hernandez testified in his deposition that he does not believe he has suffered actual damages and he is not seeking actual damages on behalf of the proposed class.

II.

In assessing Hernandez's motion for class certification, I must determine whether the four prerequisites of Federal Rule of Civil Procedure 23(a) are met, and whether Hernandez can maintain his suit under Rule 23(b)(1), (2), or (3). The four prerequisites of Rule 23(a) are that (1) the proposed class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims of the representative party are typical of the claims of the class; and (4) the representative party will fairly and adequately protect the interests of the class. FED. R. CIV. P. 23(a). Hernandez's motion for class certification proceeds under Rule 23(b)(3), which requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3). I address each of these requirements below.

### A. Numerosity

In order to satisfy Rule 23's numerosity requirement, a class must be "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). Here, defendants do not contest that Hernandez's proposed class would have, by Hernandez's estimate, at least 40,000 members.[2]

---

[2] Hernandez's proposed class is limited to persons with addresses in DuPage, Kane, Will and Lake counties in Illinois who received defendants' mailer. Hernandez's complaint originally sought a class of persons with addresses in Illinois, Indiana or Wisconsin. Hernandez explains (without comment from defendants) that he has chosen to limit the class in order to allow individual class members to recover a larger amount of statutory damages and to lessen the risk that a court would reduce a damage award as unconstitutionally excessive under *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003). *See Murray v. GMAC Mortgage*, 434 F.3d 948, 954 (7th Cir. 2006) (holding that risk of an excessive award is not a valid reason to deny class certification). As defendants have not objected to Hernandez's narrowing of the class, I will allow it.

4

This estimate satisfies the numerosity requirement. *See, e.g., McCabe v. Crawford & Co.*, 210 F.R.D. 631, 643 (N.D. Ill. 2002) ("Although there is no 'bright line' test for numerosity, a class of forty is generally sufficient to satisfy Rule 23(a)(1).") (internal citations omitted).

### B. Commonality

The second requirement of Rule 23(a) is that "there are questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). The commonality requirement is satisfied by showing "a common nucleus of operative fact." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). This requirement is usually met in cases where "the defendants have engaged in standardized conduct towards members of the proposed class by mailing to them allegedly illegal form letters" as is the case here. *See id.* (internal citations omitted). Hernandez argues that the central issue of the case is a common issue of law and fact: whether Exhibit A was a "firm offer of credit" so that it qualifies under the "firm offer of credit" exception to the FCRA's prohibition against the unauthorized access of a person's consumer credit report. *See* 15 U.S.C. §§ 1681b(c), (f). Defendants contend that Hernandez has not shown how this is a common issue because determining whether the mailer was a firm offer of credit requires more than an analysis of the face of the mailer. In defendants' view, this analysis also requires consideration of additional terms that were provided or would have been separately provided, on an individual basis, to recipients of the mailer. Defendants rely on *Murray v. HSBC Auto Fin., Inc.*, No. 05 C 4040, 2006 WL 2861954 (N.D. Ill. Sept. 27, 2006), in which the court noted that the Seventh Circuit "has never limited a court's inquiry to the mailer sent to the consumer to notify them of the offer." *Id.* at *3 (citing *Murray*, 434 F.3d at 956).[3]

---

[3] Defendants raised this same argument in their motion to dismiss Hernandez's complaint. I did not resolve this issue at that time because it was not necessary to rule on defendants' motion. *See Hernandez v. Chase Bank U.S.A., N.A.*, 429 F. Supp. 2d 983, 988 (N.D. Ill. 2006).

5

However, whether the mailer constituted a "firm offer of credit" is a question of fact and law common to the class. The defendants admit that the same mailer was sent to numerous individuals. *See Murray*, 434 F.3d at 955 (holding that whether an offer is a firm offer of credit is determined by looking at the four corners of the offer and determining whether the offer would have value to the normal consumer, which does not require a "consumer-by-consumer evaluation"). I must analyze this mailer in order to determine whether defendants accessed the credit reports of Hernandez and the class members in order to extend them a firm offer of credit. Additionally, the legal issue that defendants contend is a bar to class certification is actually a legal issue common to all members of the proposed class. Determining whether defendants were required to provide all the relevant terms of the offer on the face of the mailer is a question of law common to all class members.[4] Accordingly, I find that whether defendants the mailer was a firm offer of credit is a question of law and fact common to the proposed class. *See id.* at 955-56 (noting that FCRA cases in which defendants are alleged to have accessed the credit reports of numerous individuals in order to send them identical mailings purportedly offering credit are well-suited to proceed as a class action).

### C. Typicality

The third requirement of Rule 23(a) is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the

---

[4] I need not (and indeed, should not) resolve this substantive legal issue at the class certification stage. *See Payton v. County of Kane*, 308 F.3d 673, 677 (7th Cir. 2002) ("[A] determination of the propriety of class certification should not turn on likelihood of success on the merits.").

6

claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) (quoting Herbert Newberg, NEWBERG ON CLASS ACTIONS § 1115(b) (1977)). Here, defendants have presented no arguments why Hernandez's claim is not typical of those of the class. Hernandez's claims are the same as those of other class members; he alleges that defendants' accessed his credit report without his permission in order to send him Exhibit A, and that Exhibit A is not a firm offer of credit. Therefore, I find that Hernandez's claims meet the typicality requirement.

### D. Adequacy of Representation

The final requirement of Rule 23(a) is that the class representative must "fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). The adequacy requirement is not met if the class representative has interests that are antagonistic to or in conflict with those of class members. *See Uhl v. Thoroughbred Tech. and Telecomms., Inc.*, 309 F.3d 978, 985 (7th Cir. 2002) (internal citations omitted). Defendants argue that Hernandez is not an appropriate class representative. They cite to portions of his deposition that, in their view, demonstrate that he is unaware of a "strategic choice" his counsel made in choosing not to seek actual damages on behalf of class members, and that Hernandez has "abdicated any personal role in the case" by sitting for his deposition but being unaware of the state of the class action. Further, defendants argue that Hernandez has a "conflict of interest" with his counsel because, under his retainer agreement with

7

Daniel Edelman ("Edelman") and his firm, should Hernandez abandon the case he will be personally responsible for paying "all legal fees and costs."[5]

I find these arguments to be without merit. First, as Hernandez points out, the purported "conflict of interest" with his counsel is not truly a conflict because under Illinois law discharged attorneys may always seek compensation for services rendered before their discharge. *See, e.g., Rhodes v. Norfolk & W. Ry. Co.*, 78 Ill. 2d 217, 35 Ill. Dec. 680, 399 N.E.2d 969 (1979). As Hernandez argues, his agreement with counsel limits his liability by providing that he is only liable to his attorneys for fees and costs if he chooses to abandon the case. Further, if this court were to determine later that Hernandez was no longer an adequate class representative, the court could keep the case alive by appointing a new representative. *See Robinson v. Sheriff of Cook County*, 167 F.3d 1155, 1158 (7th Cir. 1999).

---

[5]In defendants' reply they contend that, should Hernandez dismiss his attorneys, he will likewise be responsible for paying legal fees and costs. However, this contention is not supported by the deposition testimony that defendants cite. Page 227 of Hernandez's deposition testimony transcript provides:

> Q. If you decide that this case is not in the best interests of class members and that you are no longer interested in pursuing it, do you have any understanding of whether in that circumstance you will be made responsible by your lawyers to pay the costs of this lawsuit?
>
> . . .
>
> A. The answer is yes.
>
> Q. What is your understanding?
>
> A. That it would–that I'd be responsible to pay all the legal fees and costs associated with this case.

8

Second, I agree with Hernandez that his deposition testimony does not demonstrate that he was unaware that this case does not seek actual damages on behalf of the class. In the testimony cited by defendants, Hernandez testified that it was not his intention to prevent class members from "recovering the full measure of damages for any injury that they actually suffered" and that he would not agree to pursue a case if it meant that class members who suffered actual harm would be prevented from recovering for that harm. Hernandez's complaint does not seek recovery for actual damages, and it is possible that some potential class members may have suffered actual damages. However, as the Seventh Circuit held in *Murray,* actual damages in FCRA cases are likely to be small, and class treatment would be impossible if class counsel were required to seek actual damages for each individual class member. 434 F.3d at 953. The Seventh Circuit stated in *Murray* that "[u]nless a district court finds that personal injuries are large in relation to statutory damages, a representative plaintiff must be allowed to forego claims for compensatory damages in order to achieve class certification." *Id.* Hernandez has not presented evidence that the personal injuries of class members are not large in relation to statutory damages, but I see no evidence that they would be. Further, should any class members have individual claims for actual damages that they wish to pursue, they may opt out of the class to do so. *Id.* Therefore, Hernandez's decision not to seek actual damages on behalf of the class does not contradict his stated intention not to prevent any class member from pursuing actual damages.

Finally, I do not believe that Hernandez's deposition testimony demonstrates that he has inappropriately "abdicated" his role in the case. During his deposition Hernandez demonstrated that he has a significant level of understanding of the FCRA and of the claims he has brought. He need

not understand every aspect of the theories upon which the complaint is based; this is the responsibility of class counsel. *See, e.g., Hernandez v. Midland Credit Mgmt., Inc.*, 236 F.R.D. 406, 414 (N.D. Ill. 2006). In addition, although defendants suggest that Hernandez has not demonstrated a commitment to the litigation, I do not believe this is the case. During his deposition Hernandez testified that he hoped that the case would not take more than eight additional hours of his time, but he also testified that it was difficult to estimate how much more time he would have to devote to the case because he did not know "what additional requirements might be required by the court." Hernandez's deposition testimony provides no basis to conclude that he will not adequately represent the class.[6]

Defendants also imply that Edelman is not appropriate class counsel. *See Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993) (holding that the adequacy of class counsel is part of a Rule 23(a)(4) determination). Under Rule 23(g), in appointing class counsel I must consider the work counsel has done in identifying or investigating potential claims, counsel's experience in handling class actions and the type of claim asserted in the action, and the resources counsel will commit to representing the class. FED. R. CIV. P. 23(g). In a footnote to their response, defendants imply that Edelman is not an appropriate class counsel because he has not shown that he has investigated potential claims, particularly that he has not investigated potential actual damage claims of absent class members. However, as discussed above with respect to Hernandez's

---

[6]Defendants also argue that because Hernandez testified that he has a full-time job and is "busy," he will not devote enough attention to this litigation. It would be counterintuitive to exclude individuals with full-time jobs from representing classes, since the ability to maintain full-time employment might often be indicative of capacity to serve as a class representative.

10

adequacy, it is appropriate for Edelman to choose not to bring those claims on behalf of the class. See *Murray*, 434 F.3d at 953. Analyzing the factors in Rule 23(g), I find Edelman is appropriate class counsel. Edelman has clearly worked to identify potential claims and to articulate those claims at the motion to dismiss stage and in its class certification briefings; Edelman has significant experience in litigating class actions, particularly under the FCRA; and Edelman and his firm clearly have the resources to represent the class as they have in the numerous other class actions in which have been involved.

For these reasons, I find that Hernandez and Edelman adequately protect the interests of the class.

E. Predominance

Federal Rule of Civil Procedure 23(b)(3) requires a plaintiff to demonstrate that questions of law or fact common to all members of the class predominate over any individual questions. For the reasons discussed above with respect to commonality and typicality, there is no reason to believe that any individual questions will predominate over the common questions in this litigation. Defendants have argued, as discussed above with respect to the commonality requirement, that Hernandez has not shown that common issues predominate over individual issues because he has not acknowledged that determining whether the mailer was a firm offer of credit requires an analysis of more than the face of the offer. As discussed above, it is not appropriate to resolve this merits-based argument at this time. Further, even if it is true that an analysis of more than the face of the mailer is required, this does not mean that common issues do not predominate. In *Murray*, the Seventh Circuit clearly held that the question of whether a mailer is a firm offer of credit and whether a defendant intended to honor the terms of a credit offer are questions that "readily may be

resolved for a class as whole." 434 F.3d at 956. Even if I must consider additional terms that are not included on the face of the mailer, I must also consider the common legal and factual question of how to analyze the mailer that was sent to all class members. This issue predominates over any individual issues that may arise. I find that the predominance requirement of Rule 23(b)(3) is met in this case.

F. Superiority

Federal Rule of Civil Procedure 23(b)(3) also requires that a class action be the superior method of adjudicating the claims at issue. As the Seventh Circuit noted in *Murray*, FCRA claims such as Hernandez's are well-suited to class treatment. 434 F.3d at 956. Allowing the present class to proceed would be an efficient use of judicial resources, and would be superior to individual adjudication of the class members' claims. I find that Rule 23(b)(3)'s superiority requirement is met here.

G. Class Definition

Finally, a footnote of defendants' response states that Hernandez's class definition is vague because it is unclear what "material in the form represented by Exhibit A to the Complaint" means. I do not find this to be vague. Hernandez has alleged, and defendants have admitted, that Chase Bank caused to be sent to Hernandez and other consumers, "documents in the same form" as Exhibit A. It is clear to what "material" Hernandez's proposed definition refers.

III.

For the foregoing reasons, I grant plaintiff's motion and certify plaintiff's proposed class. For the reasons stated above, I further appoint Daniel Edelman, James Latturner and Jeremy Monteiro as counsel for the class.

ENTER ORDER:

*Elaine L. Bucklo*

Elaine E. Bucklo
United States District Judge

DATED: December 21, 2006